# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| Jacinta Williams, ) | Civil Action No. 7:25-cv-03932-TMC |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| Oak Street Health MSO, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

  Plaintiff brought this action against Defendant, her former employer, asserting claims for racial discrimination, hostile work environment and retaliation in violation of Title VII and 42 U.S.C. § 1981; discriminatory conduct in violation of the South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-80; and wrongful termination in violation of South Carolina Public Policy. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred automatically to a United States Magistrate Judge for all pretrial proceedings. Defendant subsequently filed a motion to stay litigation and compel arbitration of Plaintiff's claims or, alternatively, to dismiss Plaintiff's claims for wrongful termination in violation of public policy. (ECF No. 11). Plaintiff filed a brief in opposition to Defendant's motion, (ECF No. 17), and Defendant filed a reply, (ECF No. 20).

  Now before the Court is the magistrate judge's Report and Recommendation ("Report") recommending that the Court grant Defendant's motion to compel arbitration, stay this action pending such arbitration, and find as moot Defendant's alternative motion to dismiss Plaintiff's claims for wrongful termination in violation of public policy (ECF No. 27). The Report sets forth in detail the relevant underlying facts and standards of law with respect to the issues raised by

Defendant's motion. Because neither party objects to this portion of the Report, the Court incorporates such facts and legal standards as if set forth fully herein. Plaintiff submitted objections to the Report (ECF No. 30), to which Defendant replied, (ECF No. 31). In light of the thorough briefing submitted by the parties, as well as the materials presented to the Court, the Court has determined that the issues before it have been adequately developed and that a hearing is unnecessary.

## Standard of Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No.

7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017); *see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

**Discussion**

"A party can compel arbitration if he establishes: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation marks omitted). Plaintiff does not challenge Defendant's ability to establish elements one, three or four. Rather, Plaintiff's focuses on the second element and whether the parties in fact reached an agreement to arbitrate in the first place. *See Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) ("It is clear that even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.") (internal quotation marks omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id*. "[T]he party seeking to enforce the [purported arbitration agreement] bears the initial burden of persuading this court that the parties entered into an enforceable arbitration agreement." *Gordon v. TBC Retail Grp., Inc.*, No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *5 (D.S.C. Aug. 11, 2016) (internal quotation marks omitted). If the aforementioned showing is made, "the burden shifts to the plaintiff[s] to show that even though there was some written contract, [they] did not actually agree to it-because the[ir] signature was forged, the terms

of the contract were misrepresented, or some other reason evincing lack of true agreement." *Id*. (internal quotation marks omitted).

In the Report, the magistrate judge applied the foregoing framework and concluded that Defendant met its burden of showing by a preponderance of evidence that Plaintiff and Defendant entered into an enforceable arbitration agreement. (ECF No. 27 at 8). Specifically, the Report found that the Plaintiff's Employment Agreement contained a binding agreement to arbitrate disputes related to Plaintiff's employment:

> [T]he defendant has met its burden in showing by a preponderance of the evidence that the parties entered into the Employment Agreement and its arbitration provision. As the evidence before the court shows, the defendant sent the Employment Agreement, together with Exhibit A, as a single eight-page electronic document to the plaintiff to sign through DocuSign at loreal.williams@yahoo.com, which is the plaintiff's personal email address (doc. 11-2 at 8–9, Robinson decl. ¶¶ 6, 8; doc. 17-1 at 2). The plaintiff signed the eight-page electronic document after the Employment Agreement and Exhibit A, which was the only place where she could sign (see doc. 11-2 at 6–13). The Employment Agreement also contains a merger clause stating that the Employment Agreement and Exhibit A are part of the same agreement (doc. 11-2 at 8). In signing the written contract, the plaintiff "is presumed to have read, understood, and assented to its terms." *Gibson v. Epting*, 827 S.E.2d 178, 181 (S.C. Ct. App. 2019). The plaintiff could only accept or reject the entire eight-page document because the DocuSign document was not set up to permit her to accept or reject portions of it (11-2 at 9, Robinson decl. ¶ 9). Soon after the plaintiff signed the document, Ms. Helton signed it (doc. 11-2 at 15). The plaintiff provides no evidence to dispute the authenticity of her signature or otherwise dispute this documented series of events.
>
> Both the plaintiff and the defendant engaged in conduct demonstrating mutual assent, particularly by signing the document containing the arbitration provision. The plaintiff's and the defendant's mutual promise to arbitrate, itself, is sufficient consideration. *See O'Neil v. Hilton Head Hosp*., 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement." (citing *Rickborn v. Liberty Life Ins. Co*., 468 S.E.2d 292, 300 (S.C. 1996))). The arbitration provision states that the parties "had the opportunity to negotiate" its terms, and the contract's acknowledgments states that the employee had the opportunity to consult with counsel (doc. 11-2 at 7, 9). Nonetheless, there is no evidence that the plaintiff communicated her disagreement with any of the terms of the Employment Agreement, and there is nothing to suggest that the plaintiff was denied the opportunity to negotiate the contract terms or prevented from consulting with counsel. Accordingly, for the reasons above, the undersigned finds that a valid agreement to arbitrate exists. *See McCrae v. Oak St.*

*Health, Inc.*, No. 24-cv-1670 (JPO) (KHP), 2024 WL 4692047, at *8 (S.D.N.Y. Nov. 4, 2024) (granting defendants' motion to compel arbitration), *aff'd*, 2025 WL 415389 (S.D.N.Y. Feb. 6, 2025).

(ECF No. 27 at 8–9).

### *Objections*

Plaintiff raises numerous objections to the Report. (ECF No. 30). Accordingly, the Court reviews the objected-to portions of the Report under a *de novo* standard of review.

*Michigan Law*. Plaintiff's initial objection is that the magistrate judge's conclusion that the parties entered into an enforceable arbitration agreement runs contrary to Michigan law under which the Employment Agreement containing the arbitration provision would be an unenforceable contract of adhesion. (ECF No. 30 at 2). Relatedly, Plaintiff seems to argue that Defendant should not be allowed to escape the alleged effect of Michigan law by "forum shopping," *id*. at 7; that is, Plaintiff argues that if "[Defendant] couldn't enforce such an agreement in Michigan, they shouldn't be allowed to enforce it in another state." *Id*. at 2. The Court wholly rejects these arguments. First, this case bears *no connection to Michigan in any way*. According to the complaint filed by Plaintiff herself, Defendant is an Illinois corporate entity who employed Plaintiff, a South Carolina resident, to work in Spartanburg, South Carolina. (ECF No. 1 at 2). The Employment Agreement at issue states that it "shall in all respects be construed and enforced in accordance with and governed by the laws of Illinois, federal law, the Federal Arbitration Act or the Illinois Uniform Arbitration Act, whichever applies based on the claim(s) asserted," (ECF No. 20-1 at 6), although both parties cite and rely upon South Carolina law in arguing the issue of contract formation. (ECF No. 27 at 8 and n.6). In fact, the only discernable Michigan connection is that Plaintiff's counsel, who is admitted pro hac vice in this matter, appears to live in Michigan, or practice law there, or both. Second, the suggestion that Defendant is "forum

shopping" is nonsensical. *Plaintiff*, not Defendant, chose this forum to initiate this action. And third, as noted in the Report, (ECF No. 27 at 8), the parties agreed that South Carolina law applies to the issue of contract formation in this case and relied upon South Carolina caselaw in support of their respective positions, (ECF Nos. 11-1 at 10-11; 17 at 14; 20 at 8). Plaintiff reiterated in her objections to the Report her belief that South Carolina law governs this issue. (ECF No. 30 at 6). The magistrate judge, therefore, applied South Carolina law as invited by the parties and neither side has objected—or could object—to the Report in this regard. Any objection to the Report based on a purported conflict with Michigan law is meritless, and the Court overrules it.

*Contract formation*. Next, Plaintiff raises several overlapping objections to the magistrate judge's finding that Defendant established the existence of any underlying agreement to arbitrate. Plaintiff does not deny signing the Employment Agreement; rather she argues that Defendant failed to proffer evidence reflecting that her agreement to arbitrate was "knowing and voluntary" or that she "truly assented." (ECF No. 30 at 6). Plaintiff contends, the magistrate judge failed "to apply well-established Fourth Circuit principles regarding when economic circumstances negate true assent" under *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330–31 (4th Cir. 1999). Plaintiff submitted a declaration in response to Defendant's motion indicating that Defendant required her to sign "onboarding documents" within twenty-four hours as a condition of employment and that, having been unemployed during the previous year, she felt pressured to sign quickly. (ECF No. 17-3 at 2). Plaintiff suggests the magistrate judge failed to take into account that she felt "pressured" to sign the Employment Agreement quickly in light of her economic circumstances. The Court overrules this objection. *Carson* considered the enforcement of

6

a collective bargaining agreement to arbitrate claims, not an individual employment agreement analyzed under ordinary contract principles. *See Carson*, 175 F.3d at 332 (noting "collective bargaining agreements to arbitrate [statutory discrimination] claims, *unlike contracts executed by individuals*, must be clear and unmistakable" (emphasis added; internal quotation marks omitted)). *Carson* does not control here.

Plaintiff objects to the Report's reliance on the declaration of Valencia Robinson, a human resources employee of Defendant familiar with corporate and personnel records, to authenticate the Employment Agreement. (ECF No. 30 at 16). Plaintiff points out that Robinson's declaration fails to establish that Plaintiff was told about the arbitration clause or understood she was agreeing to an arbitral forum when she executed the Employment Agreement. The fact that Robinson's declaration did not contain such details is of no moment. Defendant offered the Robinson declaration to authenticate the Employment Agreement and the respective signatures of the parties.

Likewise, the Court rejects Plaintiff's argument that the Report relied upon "suspect metadata" that "raises questions" about the authenticity of the Employment Agreement. (ECF No. 30 at 16). Plaintiff presented this precise argument to the magistrate judge. (ECF No. 17 at 9–11). The magistrate judge, for the reasons thoroughly set forth in the Report, disagreed with Plaintiff. (ECF No. 27 at 8–9). The Court agrees with the Report, rejects this argument for the reasons set forth therein, and need not expand upon its reasoning.

*Mutuality*. Third, Plaintiff objects to the magistrate judge's determination regarding contract formation on the basis that the arbitration provision is one-sided and lacks mutuality. (ECF No. 30 at 9). To the extent Plaintiff, relying upon *Noohi v. Toll Bros, Inc.*, 708 F.3d 599, 611 (4th Cir. 2013), contends that the arbitration provision is unenforceable

because it is "asymmetrical and illusory," (ECF Nos. 17 at 14; 30 at 9), the Court disagrees. In *Noohi*, the Fourth Circuit, applying Maryland law, concluded the arbitration provision at issue was unenforceable as it "unambiguously binds only the [Plaintiff homebuyer]" and not the Defendant builder and, therefore, lacked mutuality of consideration. 708 F.3d at 611. Such is not the case here, where both Plaintiff and Defendant are generally required to arbitrate claims arising out of the Employment Agreement. (ECF No. 11-2 at 7–8). And, as pointed out by Defendant, "[w]hile the Employment Agreement does exclude a limited subset of claims from arbitration, those claims are clearly defined in the Agreement and the exclusions are not subject to unilateral modification by [Defendant]" and any "modifications or amendments to the Employment Agreement require a writing signed by both parties." (ECF No. 20 at 7).[1] As the magistrate judge pointed out, "[t]he plaintiff's and the defendant's mutual promise to arbitrate, itself, is sufficient consideration." (ECF No. 27 at 9) (citing *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement." (citing *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 300 (S.C. 1996))).

*Unconscionability*. Fourth, Plaintiff argues that the arbitration provision here is adhesive and/or unconscionable and, therefore, unenforceable. (ECF No. 30 at 7–13). This objection overlaps substantially with the previous one. The Report does not expressly

---

[1] Similarly, *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79 (4th Cir. 2016), also cited by Plaintiff, does not require a different result than the one recommended by the magistrate judge. In *Galloway*, the Fourth Circuit, again applying Maryland law, rejected Galloway's argument that there was a genuine issue of fact regarding whether she entered into a binding agreement to arbitrate and noted that the "question this case presents is whether the fact that the Amended Agreement, and specifically the arbitration agreement, were in writing was sufficient to satisfy the FAA's writing requirement, or rather, whether the parties' non-written modification of a separate term of the agreement rendered the arbitration agreement unenforceable." *Id*. at 89. The Court is unable to discern how *Galloway* aids Plaintiff here.

address the issue of unconscionability; however, Plaintiff, who is represented by counsel, did briefly raise the issue—albeit in scattershot fashion and without developing a cohesive argument in her opposition memorandum—in response to Defendant's motion to compel arbitration, (ECF No. 17 at 4, 14), and Defendant addressed the issue in its reply, (ECF No. 20 at 6–9).  Accordingly, although Defendant urges otherwise (ECF No. 31 at 8–11), the Court will briefly address points raised by Plaintiff that seem to fall under the heading of "unconscionability."  Under South Carolina law, an arbitration agreement is unconscionable where there is an "absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith v. D.R. Horton, Inc.*, 790 S.E.2d 1, 4 (S.C. 2016).  Plaintiff repackages her argument regarding lack of mutuality as a challenge to the arbitration provision based on "unconscionability," arguing that the agreement here is so one-sided that it is adhesive and unconscionable.  (ECF No. 30 at 8–12).  Under South Carolina law, "[a]dhesion contracts . . . are not per se unconscionable."  *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 669 (S.C. 2007); *see also Simmons-Agnew v. HB Emp. Servs., LLC*, No. 2:20-CV-4402-MBS, 2021 WL 1783135, at *2 (D.S.C. May 5, 2021) (rejecting argument that arbitration agreement was unconscionable where it "was drafted by Defendants and offered on a 'take it or leave it basis as a condition of Plaintiff's employment'; Plaintiff had no power to negotiate; the Agreement is 'broadly drafted to include any legal disputes arising out of or related to Plaintiff's employment'; and the Agreement is far more restrictive on the part of the Plaintiff because it 'limits [her] ability to pursue claims against her employer'").  This

9

argument is based on Plaintiff's lack of mutuality theory, and the Court rejects it for the same reasons.

To the extent that Plaintiff suggests that the arbitration provision is unconscionable because it requires arbitration in Illinois, which would require Plaintiff to either travel, which would be burdensome for her and not Defendant, or appear virtually, which would put her at a disadvantage, (ECF No. 30 at 13), the Court disagrees. As Defendant notes, Rule 23 of AAA's Employment/Workplace Arbitration Rules and Mediation Procedures, which is entitled "Date, Time, Place and Method of Hearing," "*presumes* the arbitration hearing will be virtual so Plaintiff will not have to travel to Illinois" and represents to this Court that "both parties will appear virtually" such that there would be no inherent disadvantage to Plaintiff. (ECF No. 31 at 10 n.5). *See* Am. Arb. Ass'n, Employment/Workplace Arbitration Rules and Mediation Procedures, R-23 (2025), https://https://www.adr.org/rules-forms-and-fees/employment. And, to the extent that Plaintiff argues the agreement that the parties to the Employment Agreement shall share fees related to the arbitration of their disputes shows the agreement is unconscionable, Defendant notes that, under the applicable AAA fee schedule, Plaintiff's fee is capped at $350.00. (ECF No. 31 at 10 n.6). The Court declines to conclude the arbitration provision is unconscionable on this basis.

To the extent that Plaintiff contends the "[r]eferences [in the Employment Agreement] to AAA arbitration are fatally indeterminate" and, therefore, oppressive and unenforceable, (ECF Nos. 17 at 14; 30 at 14), the Court disagrees. Other courts have determined that the exact language at issue here clearly invokes the AAA rules, *see Dirth v. Oak Street Health, Inc.*, No. 24 C 5290, 2025 WL 524142, at *5 (N.D. Ill. Feb. 18, 2025);

10

*McCrae v. Oak Street Health, Inc.*, No. 24-cv-1670-JPO-KHP, 2024 WL 4692047, at *8 (S.D.N.Y. Nov. 4, 2024), *aff'd*, 2025 WL 415389 (S.D.N.Y. Feb. 6, 2025). Courts in this district have observed that the AAA's rules "do not impose oppressive terms" but ensure that a party's rights "are protected in an even-handed manner." *Talley v. ECPI University et al.*, No. 6:24-cv-06240-JDA, 2025 WL 3268306, at *6 (D.S.C. Nov. 24, 2025).

Finally, Plaintiff, citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), also objects to the Report on *public policy* grounds, arguing that arbitration of Title VII and § 1981 claims require careful scrutiny and should not be enforced in this case. (ECF No. 30 at 14–15, 18–19). The Court rejects this argument. Such claims are not excluded from arbitration under the FAA. *See Hooters*, 173 F.3d at 937 (reiterating that "agreements to arbitrate Title VII claims are . . . valid and enforceable").

## Conclusion

Having carefully conducted a *de novo* review of each portion of the Report (ECF No. 27) to which Plaintiff filed objections (ECF No. 30), the Court overrules such objections and adopts the Report (ECF No. 27). Accordingly, Defendant's motion to compel arbitration (ECF No. 11) is **GRANTED**. This action is hereby **STAYED** pending arbitration. Defendant's alternative motion to dismiss Plaintiff's wrongful termination claim is denied as moot. The parties shall provide the Court with **a status report regarding the progress of arbitration within 180 days** of the date of this order.

**IT IS SO ORDERED**.

s/Timothy M. Cain
Chief United States District Judge

Anderson, South Carolina
December 15, 2025